UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AKEEM MUTOMBO,                    :    CIVIL NO. **1:05-CV-0531**
                                  :
            Plaintiff             :    (Judge Kane)
                                  :
      v.                          :    (Magistrate Judge Smyser)
                                  :
MARTY WILLIAMS,                   :
SUPT. KLEM,                       :
OFFICER HUGHES and                :
OFFICER WILLIAMS,                 :
                                  :
            Defendants            :


## REPORT AND RECOMMENDATION


     A complaint was filed on March 15, 2005.  An amended
complaint was filed on April 8, 2005 (Doc. 17).  The
defendants filed a motion for summary judgment on May 31,
2005 (Doc. 22).  A Local Rule 56.1 statement of facts
(Doc. 23) and a brief in support (Doc. 24) were filed.  A
brief in opposition was filed (Doc. 25).  The plaintiff, the
non-moving party, filed a Local Rule 56.1 statement
(Doc. 26).  A reply brief was filed (Doc. 30).  This Report
and Recommendation addresses the defendants' motion for
summary judgment.  For the following reasons, it will be
recommended that the motion be granted and that summary
judgment be entered in favor of the defendants and against
the plaintiff.


     The plaintiff, a state prisoner, claims that the
defendant prison officials have retaliated against the
plaintiff because the plaintiff has pursued grievances,

complaints and claims against the defendants.  The form of
the retaliation according to the complaint was to bring false
prison disciplinary charges against the plaintiff charging
that he had violated institution rules, leading to the
disciplinary confinement of the plaintiff and to the
rejection by parole authorities of the plaintiff's
applications for parole.

The complaint[1] concerns an incident that occurred on
February 5, 2005.  The plaintiff alleges in his complaint
that on February 5, 2005, at 8:30 a.m., he entered the
Program Services building at S.C.I. Mahanoy to use the law
library.  He was told that he had arrived too early.  He was
ordered to return to his cell block, and did so.  He was
issued a new pass to go to Program Services.  When he
returned to Program Services with the new pass, defendant
Officer Hughes asked him where he had gone.  The plaintiff
alleges that from this incident a misconduct charge arose
against him which resulted in a misconduct hearing where
defendant Hearing Examiner Klem allowed false testimony to be
presented and wrongfully determined that Mr. Mutombo had
committed a misconduct.  The plaintiff had been scheduled for
parole consideration in July, 2005.

---

1.
   The Amended complaint is not a complete document that states all of the
   plaintiff's claims against all of the defendants and that is drafted to
   replace the complaint.  We will address the complaint herein, as the
   defendants have in this motion.

2

The defendants' motion for summary judgment presents these facts as undisputed.

1. Akeem Mutombo ("Mutombo"), inmate # EW-9663, is currently housed at the State Correctional Institution at Mahanoy ("SCI-Mahaony").

2. The defendants are five officials and employees of the Pennsylvania Department of Corrections working at SCI-Mahanoy: Hearing Examiner Marty Williams, Hearing Officer J.K. Kane, Superintendent Edward Klem, and Correctional Officers Donald Hughes and Samuel Williams.

3. On February 2, 2005, Mutombo had attempted to enter the law library located in the program services building at 8:15 a.m.

4. Correctional Officer Hughes ordered Mutombo to return to his block because the law library does not open until 8:30 a.m. on Saturdays.

5. Correctional Officer Hughes did not check Mutombo's pass at that time.

6. Correctional Officer Hughes called the front desk at Block G and spoke with Correctional Officer Williams to inform him he had ordered Mutombo to return to G Block.

7. Correctional Officer Williams informed Correctional Officer Hughes that Mutombo's pass was located on his desk and he had not arrived yet to pick it up.

8. Mutombo returned to the program services building to enter the law library at 8:30 a.m.

9. Correctional Officer Hughes checked Mutombo's pass which revealed it was issued for another inmate to attend the gymnasium at 8:05 a.m.

10. For a second time, Correctional Officer Hughes ordered Mutombo to return to G Block to get his pass in order to enter the law library.

11. Mutombo did not arrive at G Block until 8:35 a.m. to pick up his pass for the law library.

12. Correctional Officer Williams signed Mutombo's pass at 8:35 a.m. as the issuing authority allowing him to proceed back to the law library.

13. Correctional Officer Hughes allowed Mutombo to enter the law library when he returned with his properly issued pass to enter the law library at approximately 8:40 a.m.

14. Correctional Officer Hughes completed a misconduct report charging Mutombo with three violations of the

4

Department of Corrections rules which included a #B35 refusing to obey an order, #B43 presence in an unauthorized area, and #B42 lying to an employee.

15. On February 14, 2005, Mutombo was provided a hearing on the charges by Hearing Examiner Kane.

16. Kane determined Correctional Officer Hughes' report to be more credible than the inmate's denial of the charges.

17. Kane concluded Mutombo was guilty and imposed a sanction for a cell restriction of thirty days to be effective from February 14, 2005 through March 15, 2005.

18. Kane made the findings of fact, issued the verdict and imposed the sanctions based on the misconduct report of Correctional Officer Hughes and the pass that had been issued to Mutombo revealing he did not receive it from G Block until 8:35 a.m.

19. Kane had no knowledge of or involvement with the issuance of the misconduct report by Correctional Officer Hughes.

20. Kane was not directed or influenced by anyone, any prior litigation or grievances filed by Mutombo in making his determination of guilt on these charges.

21. A cell restriction as imposed means that the inmate would not be allowed to leave his housing unit for work, school or programs. He would still leave the housing unit for meals, showers, two hours exercise per day, may attend one religious service each week, is permitted to go to the commissary and has access to the medical department and law library.

22. On February 15, 2005, Mutombo filed an appeal to the Program Review Committee ("PRC") alleging there were procedural violations and insufficient evidence for the findings of the Hearing Examiner.

23. The PRC was composed of three employees of SCI-Mahanoy, including Defendant Marty Williams, who reviewed the record and determined the hearing examiner followed the procedures outlined in the Department of Corrections Administrative Manual 801 and the misconduct report along with the pass was sufficient evidence for the hearing examiner's verdict of guilty on the charges.

24. PRC sustained the findings of the hearing examiner.

25. Marty Williams' decision as part of the PRC was based solely on the record.

26. On February 23, 2005, Mutombo filed an appeal to the Superintendent of SCI-Mahanoy, Defendant Edward Klem alleging

6

there were procedural violations and insufficient evidence
for the findings of the Hearing Examiner.

27. Superintendent Klem reviewed the record composed of
the misconduct report, findings of the Hearing Examiner,
findings of the PRC, and Mutombo's appeals.

28. Superintendent Klem determined no procedural
violations had occurred and there was sufficient evidence to
support a finding of guilt.

29. Superintendent Klem had no knowledge or any
involvement with the issuance of the misconduct report or the
decisions made by the Hearing Examiner or the PRC.

30. Neither Klem nor anyone else directed the misconduct
to be issued.

31. The misconduct issued was in no way related to any
prior grievances or the prior civil actions filed at *Mutombo
v. Klem*, 1:04 CV 00314 and *Mutombo v. Klem, et. al.*, 1:02 CV
2047.

Doc. 23, LR 56.1.  The plaintiff disputes some of these facts
(Doc. 26), and some of these are conclusions of fact based
upon the defendants' summary judgment evidence as a whole.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Young v. Quinlan*, 960 F.2d 351, 357 (3d Cir. 1992).  After such a showing has been made, the nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact.  Rather, the nonmoving party must go beyond the pleadings and offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial.  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); Fed.R.Civ.P. 56(e). "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, [citation omitted] the nonmoving party . . . 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file.'"  *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994) (quoting *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992)).

To determine whether the non-moving party has met his or her burden, the court must focus on both the materiality and

the genuineness of the factual issues raised by the non-movant. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 250. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.'" *Pastore*, 24 F.3d at 512 (quoting *Big Apple BMW, Inc. v. BMW of N. America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993)).

The defendants' motion is based to a significant extent upon the assertion that the plaintiff has failed to demonstrate that he has evidence of retaliation. We agree with the defendants that the plaintiff has failed to show

that he has evidence of retaliation.  However, the plaintiff
has adequately pleaded that the defendants conspired to
violate the plaintiff's First Amendment rights by retaliating
against the plaintiff with a false disciplinary charge for
the reason that the plaintiff had exercised his First
Amendment rights.

For summary judgment purposes, a motion that is
presented on the basis of a theory that the plaintiff lacks
evidence sufficient to carry his burden of proof is not
generally meritorious when discovery is not completed.  Here,
a discovery deadline of December 16, 2005 was set by the
Order of June 16, 2005.  We note that the plaintiff's
argument does not preview any scenario by which he would
expect to have evidence of retaliation after discovery.
Nevertheless, since the defendants can not claim that after
reasonable opportunity for discovery the non-moving party can
not meet his burden, there is not presently a valid summary
judgment theory based upon such an analysis.  *Celotex Corp.
v. Catrett,* supra.

The defendants' motion does not rely solely upon the
plaintiff's lack of evidence to carry his burden of proof.
The defendants rely principally upon their own affirmative
proof of an absence of retaliatory motivations on their part
for their roles and actions in disciplinary actions against
the plaintiff.  Their proof is presented in the form of their
declarations under penalty of perjury.  Doc. 24, Exhibits 1,

2, 3, 4, 5.  These declarations support the defendants'
statements of undisputed facts.  The plaintiff, on the other
hand, does not show by the introduction of summary judgment
evidence that it is in dispute whether the defendants or one
or more of them had a retaliatory motive for actions that
they took and decisions that they made affecting the
plaintiff.  The plaintiff's evidence goes to the issue
whether he was guilty of committing an infraction of the
rules involving prisoner movement, the use of a pass for such
a movement on February 5, 2005 and the time(s) that morning
when plaintiff Mutombo was present at the law library and
when he was present at his cell block.  His evidence is the
affidavit of Robert Melendez, a fellow prisoner, who had
declined to be a witness at the plaintiff's disciplinary
hearing because he feared retaliation but who states here
that the plaintiff did not leave his cell block on
February 5, 2005 before about 8:25 a.m.  Proof that there was
evidence available that could have favored the plaintiff's
defense at his disciplinary hearing, even assuming that
Robert Melendez's testimony would have substantially aided
the plaintiff, is not such proof as to give rise to a
reasonable inference that the plaintiff was found to have
committed a disciplinary infraction as the result not of an
ordinary disciplinary adjudication but rather of an agreement
among prison officials to retaliate against the plaintiff for
his litigation activities.

The defendants' evidence supports the defendants'

11

proffered undisputed facts and, principally, the inference
that the defendants did not retaliate against the plaintiff
for his exercise of First Amendment rights.  The plaintiff's
evidence does not support a reasonable inference of
retaliation.

There is not a genuine dispute of fact, as demonstrated
by the summary judgment evidence, as to whether the
defendants acted to discipline the plaintiff not because of a
disciplinary violation but because we had brought lawsuits
and grievances.  The defendants are entitled to summary
judgment as a matter of law.  It is recommended that the
defendants' motion for summary judgment be granted and that
the file be closed.


                         */s/ J. Andrew Smyser*
                          J. Andrew Smyser
                          Magistrate Judge


Dated:   July 14, 2005.